Staples, J.,
delivered the opinion of the court.
This case comes before us upon a writ of error to the judgment of the Corporation court for the city of Alexandria. The prisoner was indicted in that court for bigamy. On the trial he offered to prove that his first wife was a common prostitute ; that his marriage with her was the result of a conspiracy between herself and one Cooke and others, by which the ceremony was performed against his will and under duress imposed upon him. To the introduction of this evidence the attorney for the Commonwealth objected : the objection was sustained; and the prisoner excepted.
The evidence being closed, the prisoner asked for instructions, which the court refused ; and in lieu thereof gave certain other instructions. It does not appear, however, that any exception was taken to this ruling of the court. The jury found the prisoner guilty, and fixed the term of his imprisonment in the penitentiary at three years. He made no motion for a new trial; but the record states that the jury having returned into court with their verdict, the prisoner thereupon tendered his bill of exceptions, and prayed that, the same might be signed, sealed and enrolled, which was accordingly done.
In his petition, the counsel for the prisoner does not suggest any error in the rejection of the evidence offered by him, and made the ground of the first bill of excep *805 tions. His assignment of errors relates exclusively to the instructions asked for by him and refused by the court; and to the competency of the evidence adduced by the Commonwealth to establish the fact and the validity of the first marriage. As the prisoner excepted neither to the instructions nor to the evidence, it is difficult to perceive how these obj ections, even if well founded, can avail him in this court. The last bill of exceptions may, however, be regarded as raising the question of the sufficiency of the evidence to warrant the finding of the jury ; and in this view it may be proper, in tenderness to the prisoner, to consider the grounds suggested by him. for reversing the judgment of the court below.
The second marriage was fully admitted on the trial; and no question arises in regard to that. The first marriage was alleged to have taken place in the city of Washington, in the District of Columbia. It was proved that in January 1868, the prisoner was married in that city to Mary JBroden (his first wife), at the residence of the Rev. P. F. McCarthy, a Roman Catholic priest, duly authorized by the canons of his Church and the laws of the District of Columbia, to celebrate the rites of marriage ; that the prisoner carried to the said McCarthy a license issued by the proper officer of said city, authorizing the marriage, which was in the usual form used in the District; that the said McCarthy, in the presence of two witnesses, performed the marriage ceremony; that said ceremony was conducted in accordance with the rules and customs of the Catholic Church and the law's of the District of Columbia ; that the parties since that period have lived together as man and wife.
It is insisted that this evidence did not warrant a conviction ; that it was incumbent upon the Commonwealth to prove the law in force in the District of Columbia regulating marriages ; that the ceremony was performed in conformity with its provisions ; and such proof of the law must have been derived from some person of com *806 petent skill and knowledge, as an expert, or from duly, authenticated documentary evidence.
It is true that in prosecutions for bigamy, where a marriage is alleged to have taken place in a foreign State or country, the courts always require proof of a valid marriage according to the laws of that State or country. But they have never held that any particular kind of evidence was essential to establish this fact. Tlie extent to which they have gone is, that in criminal prosecutions and certain civil actions, a valid marriage cannot be proved by reputation and cohabitation. In England it is the settled rule, that a foreign marriage may be proved by any competent witness present at the ceremony, with further proof of such circumstances as lead to the conclusion that the marriage-is valid according to the laws of the country in which it is celebrated. In Rex v. Inh. of Brampton, 10 East’s R. 282, it appeared that the marriage was contracted in St. Domingo. The parties being on that island and wishing to be married, went to a place of worship in that country and were married by a person professing to be a priest; and after such marriage they cohabited as man and wife for eleven years. This was all the evidence adduced. LordEllenborongh said it was a good marriage by the law of England ; but supposing the law of England not to have been carried to St. Domingo, every presumption must be made in favor of its validity according to the laws of the country where it was celebrated.
It is true that this was not a criminal prosecution ; but the nature of the proceeding required proof of a valid marriage in fact, as distinguished from proof by reputation and cohabitation. In all such eases the rule is the same in respect to the evidence to be adduced, whether it be a criminal or civil proceeding. See also Hemmings v. Smith, 4 Doug. R. 33; 3 Waterman’s Archbold 613.
In the United States there are numerous cases to the *807 same effect; but it is not necessary to refer to more than two or three of these. In the State v. Kean, 10 New Hamp. R. 347, it was decided that the testimony of a witness that he was present at the marriage of the accused in the State of Maine, and that the service was performed by the settled minister of the place, who was in the habit of officiating in such services in other instances, is sufficient evidence of a valid marriage, without further proof of the laws of the State of Maine, or that the person officiating was duly authorized to administer the rites of marriage. See also State v. Rood, 12 Verm. R. 396.
In Warner's case, 2 Va. Cas. 95, this precise question did not arise. But White, judge, in the course of his very elaborate opinion, in which all the judges concurred, said that where the first marriage was established out of the State by a person who, from all the circumstances of the case, must reasonably be presumed to have filled a character authorizing him to do so, and who was recognized as the proper officer by the accused himself and the company present, and further proof, that after the ceremony, the parties lived together publicly as man and wife, such evidence, if not inpugDed by other testimony, is proper, competent and sufficient to convict the accused.
In Oneale's case, 17 Gratt. 582, it was decided, that the prisoner’s admissions, deliberately made, of a prior marriage in another State, are sufficient evidence of such marriage, without proving it to have been celebrated according to the law of such State. And yet, such admission involves not only the fact of the marriage, but its validity in point of law.
Although the testimony of a witness present at the marriage may not be as conclusive or satisfactory as the confession of the party, there is no solid reason for rejecting it as' incompetent. There is no technical rule forbidding the reception of such evidence. When a •witness testifies to a marriage in a foreign State, solemn *808 ized in the manner usual and customary in such State, by a person duly authorized to celebrate the rites of marriage, and the parties afterwards lived together as man and wife, this is as satisfactory evidence of a valid marriage as could be expected or desired, and in such case it is not necessary to prove the laws of such State, or to offer further evidence of a compliance with its provisions.
This view renders it unnecessary to notice the second assignment of error, that a priest or minister is not competent to prove the law of another State or country upon the subject of marriage. It might be easily shown that he is competent for that purpose. And this upon the principle recognized in Vander Donckt v. Thelluson, 8 Man. Gran. and Scott 812, in which it was held, that all persons who practice a business or profession which requires them to possess a certain knowledge of the matter in hand, are experts, so far as expertness is required. See also Sussex Peerage Case, 11 Clark and Fin. R. 55.
Thus far the laws of the District of Columbia have been treated as the laws of a sister State, or foreign country. Is it proper so to consider them? By the first section of the act of Congress of February 17th, 1801, it was provided that the laws of Maryland should continue in force in that part of the district ceded by it; and with them of course was continued the law in respect to marriage. By this enactment and recognition these laws became, to all intents and purposes, laws of the United States ; of which the State courts will take judicial notice. The judge of the Corporation court was, therefore, right in holding that the acts of Congress of a public nature applicable to the District of Columbia are matters of judicial cognizance, and are not required to be proved as facts.
For these reasons the judgment of the Corporation court must be affirmed.
Judgment arrirmed.